The case for argument this morning is Carello v. Aurora Policeman Credit Union Mr. Akita Good morning, your honors. May it please the court, my name is Richard Akita on behalf of the plaintiff's appellant, Matthew Carello. I'd like to start with a quote from Judge Easterbrook's Blue Cross decision issued several years ago. Decisions are decisions of the court. They are not of particular judges. Thank you for the clarification, your honor. In Blue Cross Blue Shield of Massachusetts v. BCS International, the Seventh Circuit stated, the statute is what it is and judges must implement its rule whether or not they think it wise. Your honor, I think that succinctly summarizes exactly why the district court's order dismissing my client's action in this case should be reversed. Because the court, the district court, if you read between the lines, in essence the district court applied what has been previously referred to as prudential standing. No, the district court said there was no injury in fact. Access to this website matters only to people who are or might be members. That only they could be injured. That's what the district court said. Now that may be right or it may be wrong, but it is what the judge said. I understand. That's a core Article III standing holding. I totally agree. There's nothing in the opinion that talks about prudential standing, but I think that the district court basically essentially applied what has been referred to by the Supreme Court as a zone of interest test, which used to be referred to as prudential standing, but now it's referred to as a zone of interest test. And my client definitely falls within the zone of interest as a blind disabled individual who qualifies under the Americans with Disabilities Act as a disabled person. Now let me refer to an inherent inconsistency within page four of the district court's opinion that highlights exactly what the problem is or what makes the district court's opinion clearly reversible. On page four, the court, in attempting to distinguish the Mankiewicz versus Pottstown Memorial Medical Center Third Circuit published opinion, the court says, quote, but as Mankiewicz shows, this argument is relevant to the statutory scope of the ADA and has nothing to say about whether Carrello has alleged an injuring fact. And then he goes on and says, the court says, true, the ADA applies to more people than just those who can be described as customers and clients, but that does not mean that an inability to be a customer and client, as is the case with Carrello's relationship to the credit union, is not relevant to analyzing whether Carrello has alleged an injuring fact. Now, Your Honor, just as you stated in the prior argument, both statements cannot be true. In fact, Your Honor, the reality is that the statutory scope of the ADA does, in fact, have great relevance to determining whether there was an injuring fact for purposes of Article III of the Constitution. And I think that what's referenced in both the opinion opening brief and the reply brief, but I think I'd like to focus the court's attention to the Seventh Circuit's opinion in the Kiles case, which I think is highly significant and relevant to understanding exactly why the district court erred in its inconsistent analysis. of Article III standing. In the Kiles case, the Seventh Circuit held, and I'm going to refer to a bunch of several quotes, if you'll indulge me. The Seventh Circuit held, where federal statutory rights are at issue, Congress has considerable authority to shape the assessment of standing. The court also held, although it may not lower the threshold for standing below the minimum requirements imposed by the Constitution, Congress can extend standing to the outermost limits of Article III, which, by the way, I would submit that that certainly applies to Title III of the ADA, which is that issue here. I'm hoping that sooner or later you will get to a discussion of the Fourth Circuit's opinion in Griffin, which was cited to us last month and is highly adverse to your position. I thought you might want to discuss it. Well, yes, and I didn't want to repeat the arguments in the reply brief, which comprehensively analyzes the Griffin decision as distinguishable, but I will certainly address the Griffin decision, given it is certainly adverse, if you'll indulge me on that. First of all, Your Honor, the Griffin decision, while alluding to the Mankiewicz decision, does not squarely address the fact that statutory standing and Article III standing, that the inquiries for both can be overlapping. In fact, there is Fourth Circuit precedent that was not followed in the Griffin decision, as exists in virtually all the circuits that I researched in precariousness. But you seem to be arguing that statutory standing can surpass Article III standing. Griffin was an Article III, it was a constitutional decision. Let's just concede, let's deposit that the ADA would grant you standing here. Why doesn't that transgress the limits of Article III? Well, Your Honor, based on our research of the case law, as Justice Scalia said in the Thompson decision in 2011, Article III standing is the bare minimum, is the minimum. And statutory standing actually should be analyzed as, in some instances, requiring a higher threshold than Article III standing. So, given those... The question was whether Article III standing is satisfying. That was, of course, the district court's holding. Let me put to you a different way in which this website could have been managed. Let's suppose it's managed so that before you can access it at all, you have to show that you're either a member of the credit union or eligible for membership. Otherwise, you never get to it. And the consequence of that is that your client could not navigate the website. Indeed, he couldn't have navigated it even if he were cited. Would that have infringed any of his rights? Well, if I understand the question correctly... I am hypothesizing that there is an absolute and total block of access. Your client couldn't reach the website at all. Would that have violated any of your client's rights? As long as a person who is not sight-impaired, so somebody who has no vision issues, is equally blocked from accessing that website as well. So, for example, I understand the hypothetical now. So, for example, if there is a pay website. There are certainly websites out there where, like, for example, some news websites, a lot of news websites have converted into pay websites, where you actually have to have a nominal membership and pay for the access of the news website. If you are completely blocked from getting access to that website, including a sight-impaired person who wants access, then the blind person or a deaf person or somebody else who qualifies as disabled under the ADA, their rights would not be infringed under that fact pattern, that hypothetical. So, in fact, I want to point out in Brintley v. Aeroquip Credit Union, a published district court opinion that is cited in our briefs. The district court honed in on precisely what is the fundamental issue in terms of why there is discrimination going on in terms of a website in which a blind individual is not a member or eligible for membership in a credit union. And the court said, and I'm going to quote this, an order requiring a defendant to comply with Title III would provide plaintiffs with the opportunity to access the website and explore defendants' amenities, precisely the same opportunity a defendant already affords to sighted individuals who are also non-members. He can't enjoy any of the amenities. Well, the question is, what are the amenities? Why does he want to access the website? What's the point? He can't join the credit union. Well, Your Honor, we don't make any issue, or we don't contest the fact that our client in this action is what's called a tester, somebody who is attempting to enforce the civil rights law. And testers don't always have Article III standing because they don't always satisfy particularized injuries. It certainly is the case in, for example, a situation where somebody who is, let's say, who is mobility impaired, somebody who is in a wheelchair, is trying to access a physical location, and let's say the location is like this crazy distance away, like 1,000 miles away, and there's absolutely no reason for that person to be in the vicinity. What's the difference here? Wouldn't that be a dignitary harm? Your Honor, if I decided to go to Hawaii and try to access this hotel, I understand that it's not wheelchair accessible. What is the difference between that and your client's situation? Well, the fact that the service at issue is a digital service. It can be accessible from the comfort of a blind person's residence or if they're at Starbucks or any other local location. They don't actually have to travel to the physical location where the physical barrier is. Let's say a restaurant or a hotel room has a physical barrier. The restroom is not accessible for somebody in a wheelchair. But isn't your harm dignitary? Yes. Is that your strongest argument? Yes. It's not just informational, but it's also dignitary. And that is the crux also in terms of the district court's error here because the district court basically said that even if you're a blind person and you personally encounter an inaccessible website, that there is no dignitary injury there. But that, in essence, undermines. It's a backdoor way of undermining the well-established case law, including in Kyle's, which recognized tester liability in the Title VII Civil Rights Act of 1964 context. So it's a different statute. But the same private attorney general analysis in the Kyle's decision equally applies in the Title III ADA context, which is exactly why there's so much case law in recent years, in the past decade or so, recognizing tester liability as a perfectly appropriate method in which an ADA litigant, whether they're wheelchair-bound or otherwise, can surpass or get past the Article III injury in fact constitutional standing requirements. So on this dignity injury issue, this issue was addressed at length in the Eighth Circuit's Shaver decision, which, by the way, cited to the Seventh Circuit's Kyle's decision. So the Kyle's decision, Your Honor, I would submit, is highly relevant in terms of explaining precisely why testers should have Article III standing in a civil rights context, which is directly applicable here. And as I said, in the Arrowcliff decision, that really highlights the precise legal issue at issue here. If you have a situation where somebody who is not sign-impaired has access to a website and can enjoy... By the way, the ADA statute doesn't talk about material benefit or usefulness. The ADA statute, the general statute, references enjoyment. So under that standard, Your Honor, my client has alleged that his enjoyment was interfered with in terms of accessing the website, and it would be a different situation if a nonmember who is not sign-impaired was equally prevented from accessing a website. So in other words, that begs the question, why should somebody who is not a member, not eligible for membership, who is not sign-impaired, why should that individual be able to produce the website to look at the eligibility criteria, to keep checking to see if the eligibility criteria changes in the future? Who's to say that the eligibility criteria geographically or otherwise doesn't change in the future? Why should a blind individual have to rely on somebody else to look at those changes? Thank you. Thank you, counsel. Mr. Shalalpour. May I please the court, counsel? My name is Ram Shalalpour, and I represent the defendant Aurora Policeman Credit Union in this matter. Your Honors, to establish constitutional standing, a plaintiff is required to sufficiently allege injury in fact. In this case, there are three components to injury in fact. One, that the harm is concrete. Two, that the harm is particularized. And three, because of the fact that Title III of the ADA only provides for injunctive relief, the plaintiff is required to sufficiently allege real or immediate threat of future harm. In this matter, the plaintiff, Mr. Corrello, doesn't satisfy any of these three components, beginning with the first component of concrete harm as the Fourth Circuit. Suppose he were to allege that he had a business of helping blind people navigate difficult-to-navigate websites and that he needed to explore websites in order to carry on that business. Would that create standing? In that theory, in that theoretical, his business would be harmed if he's unable to assist these other individuals. I guess in that narrow theoretical, it would be, but that's not what's been presented in this case. I understand that that's not his allegation, but something like that means that it would not be precise to say that somebody who himself cannot join the credit union could never suffer injury from being unable to navigate its website. Correct, Your Honor, but in this case, he hasn't identified that alternative purpose. Counsel, in Judge Easterbrook's hypothetical, would such a person have to have a blind client who was interested in using the credit union or at least show that there was some blind person eligible? I think that person would need a client like that. Otherwise, they'd run into the same problem that Mr. Carrello is running into here. Without any person on the other side who can or is a member of the credit union, the website serves no purpose. So for Mr. Carrello here, where he's attempting or allegedly attempting to peruse this website for his own purpose, it makes no sense because he can never be a member of the credit union. So the first component of injury in fact is the allegation of a concrete harm. As the Fourth Circuit recognized in Griffin v. Department of Labor, Federal Credit Union, there was no concrete harm where the plaintiff is ineligible to become a member of the credit union. And the Fourth Circuit analogized the case to the Supreme Court's decision in Allen v. Wright, which involved a dispute about a tax exemption for a racially discriminatory school. In the opinion, Justice O'Connor stated if there's a minority in Hawaii trying to sue because there's a racially discriminatory school in Maine and alleging that his dignity is harmed by that knowledge, the court said in such an instance the geographical limitation would sever any concrete or particularity to the harm. Here there's no geographic restriction, but it comes in the form of a legal restriction that this plaintiff is legally barred from becoming a member of the credit union and therefore any harm to him in the form of his dignity isn't concrete, it's too abstract. The plaintiff has, in the brief, cited a number of employment cases, employment discrimination cases, where courts, including the Seventh Circuit, have found tester standing based on the idea of dignitary harm. But as the district court here recognized, there's a difference between employment discrimination or, for example, fair housing discrimination, where the discrimination is targeted in a malicious and intentional manner at a certain plaintiff, whereas here, Title III, there is no similar concrete targeted harm where it's more diffuse and it's a public accommodation that's allegedly inaccessible. But there is a growing body of case law recognizing tester standing under Article III of the Act. Some circuits have recognized that, and your position is difficult to reconcile with those cases. Well, some circuits, I believe you might be referring, in part, to Houston versus Merritt Supermarket. The cases state that testers don't automatically get deprived of standing just because they're testers, but they still have to satisfy the other elements. And so here, dignitary harm, because of the legal barrier, which wasn't present in Houston versus Merritt and any other circuit case that's a circuit court that's dealt with Title III, there is no legal barrier preventing the plaintiff from actually using the services of the defendant accommodation. And so that's why in Houston versus Merritt, the plaintiff couldn't simply allege, I'm going to go back to the accommodation just to test its compliance. He had to allege, I'm going to go back to the supermarket because my lawyer lives there, I drive by there, and I want to go shop there, but for the lack of accommodation. So the legal barrier severs any concrete and particularized harm as well as any future threat of immediate harm. There's an alternative argument made by plaintiff separate from the dignitary harm, and that's that he doesn't have access to the information on the website, which he seemed to concede isn't useful to him in any particular manner, but that he would then share that with other people. There are a couple problems with that line of thought. The first is, to the extent he wants to share information about the website, he can simply pass along the website URL to any other individuals that want to obtain any information about Aurora Policeman Credit Union. Secondly, to the extent anybody's harmed by that lack of information flow, it's the plaintiff's friends or colleagues who are getting that information from him, not the plaintiff himself. So that end-around injury-in-effect requirement fails for those reasons. So the harm is not concrete, it's also not particularized, and the Fourth Circuit in Griffin v. Department of Labor Federal Credit Union analogized the case to Lou John v. Defenders of Wildlife, Supreme Court opinion. And that Supreme Court opinion, which dealt with the Endangered Species Act, the Supreme Court noted that just because certain federal regulation might affect endangered species across the world, the fact that there are people across the country who might be affected by that because they might not see that endangered species isn't a particularized harm in the context of constitutional standing. And a similar approach is proper here because to the extent APCU's website isn't accessible, that's not a particularized harm to this plaintiff. It's a general harm to any disabled or visual-impaired individuals, whereas a particularized harm to somebody would have to be somebody who's either a member of the credit union or attempting to be and is within the field of membership. So because the harm is not concrete or particularized, the injury in fact standing must be rejected. And then the final element is the fact that there's no real or immediate threat of future harm. Here there's no plausible reason why the plaintiff would want to go back to APCU's website because he can't be a member and he isn't a member of APCU. Courts across the country almost uniformly have rejected the argument that a plaintiff can solely go back to a place of accommodation just to test his compliance. Courts have found that, quote, to quote a Western District of North Carolina opinion in 2011, the naked assertion of a desire to return to a defendant establishment for the sole purpose of confirming ADA compliance without more is insufficient to establish standing. Here there's no reason for the plaintiff to come back to the defendant's website but for his alleged assertion that he wants to test his compliance. That's not enough to state a plausible intention to return. Otherwise, it's kind of an inconsistent argument where the plaintiff is alleging harm to his dignity when he does go to the website and then states he's going to go back to the website for no other reason. It's almost a self-infliction of harm for those reasons. And if Your Honors don't have any more questions... I see none. Thank you very much. The case is taken under advisement.